UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PICA CORPORATION,

        Plaintiff,              Case No. 2:07-cv-1126
                                          JUDGE GREGORY L. FROST
    v.                                   Magistrate Judge Norah McCann King

CLARENDON AMERICA INSURANCE
COMPANY, et al.,

        Defendants.

## OPINION AND ORDER

This matter comes on for consideration of the parties' cross motions for summary judgment. For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Doc. # 15) and **GRANTS** Defendants' Motion for Summary Judgment (Doc. # 16).

### I.  Background

Plaintiff PICA Corporation ("PICA" or "Plaintiff") requests a declaration that Defendants Clarendon America Insurance Company ("Clarendon" or "Defendant") and First Mercury Insurance Company ("First Mercury" or "Defendant") each have a duty to defend and indemnify PICA in an underlying lawsuit under certain commercial insurance policies.[1]

Clarendon insured PICA under Policy Number HX00007341 for the October 15, 2003 to October 15, 2004 policy period.  First Mercury insured PICA under Policy Number FMM1002019 for the October 15, 2004 to October 15, 2005 policy period.  First Mercury insured PICA under Policy Number FMM1002019-2 for the October 15, 2005 to October 15,

---

[1] All of the relevant insurance policies and the underlying lawsuit at issue in this action are attached as Exhibits to Plaintiff's Motion for Summary Judgment.  (Doc. # 15.)

2006 policy period.  The Clarendon and First Mercury policies contain an identical "Errors and Omissions Endorsement," ("E&O Endorsement").

The underlying lawsuit at issue in this action was filed on November 14, 2006 by MMCA Group Ltd. ("MMCA") in the United States District Court for the Northern District of California, *MMCA Group Ltd. v. Hewlett-Packard Company*, No. C0-06-7067.  In that litigation, PICA is a named defendant.  MMCA is a worldwide investigative firm specializing in intellectual property matters, including the investigation of copyright and trademark counterfeiting.  In 1991, Hewlett-Packard ("HP") hired MMCA as an independent contractor for HP's Anti-Counterfeiting Program and the two businesses entered into the HP Services Agreement #HPOP6638, which became effective March 1, 2003.

In the complaint in the underlying lawsuit, MMCA alleges that the HP Services Agreement indicates that it is the owner of trade secrets that include the "means and methods used to provide investigative services and investigative functions" to HP.  MMCA further asserts that the HP Services Agreement contains a non-solicitation clause which states that "during the term of [the] Agreement and for one year after the expiration of [the] Agreement, neither HP nor MMCA shall solicit to hire the other party's employees without prior written permission."  MMCA alleges causes of action for (1) interference with prospective economic advantage, (2) interference with contractual relations, (3) misappropriation of trade secrets under California law, and (4) conspiracy.

On December 18, 2006 PICA tendered the defense of the MMCA litigation to both Clarendon and First Mercury.  Ultimately both Defendants denied coverage.

PICA, an Ohio corporation, filed the instant declaratory judgment action in the Court of

Common Pleas, Franklin County, Ohio on September 12, 2007. Clarendon, an Illinois Corporation, and First Mercury, a New Jersey Corporation, removed the action to this Court based upon diversity jurisdiction. *See* 23 U.S.C. 1332.

On March 31, 2008, PICA filed a motion for summary judgment (Doc. # 15), Clarendon and First Mercury opposed that motion (Doc. # 21), and PICA filed a reply in support of its motion (Doc. # 22). On March 31, 2008, Clarendon and First Mercury also filed a motion for summary judgment (Doc. # 16), which PICA opposed (Doc. # 20), and Clarendon and First Mercury filed a reply in support of their motion (Doc. # 23).

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### III.  Summary Judgment Motions

In the instant action, PICA alleges that the refusal to defend it in the MMCA litigation and to indemnify it for the costs of the defense of that litigation is a breach of Clarendon's and First Mercury's contractual duties to PICA.  PICA further alleges that these Defendants' refusal to defend it and indemnify it was without reasonable justification and constitutes bad faith.  Clarendon and First Mercury request summary judgment on all PICA's claims.  PICA requests summary judgment on its duty to defend claim and indicates that if the Court rules in its favor on that cause of action it will then proceed on its other claims.

The policy language at issue is as follows:

1. SECTION I – COVERAGE D – ERRORS AND OMISSIONS LIABILITY IS ADDED:

Insuring Agreements:

> a.  We will pay those sums that the insured becomes legally obligated to pay as damages resulting from errors or omissions in the practices of your business.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

. . . .

> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

> b.  This insurance applies to injury, other than "bodily injury," "property

>damage," "personal injury" or "advertising injury," which is caused by an "occurrence" that occurs during the policy period and that takes place in the "coverage territory."

For the purpose of the E&O Endorsement, occurrence is defined as follows:

>12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The parties disagree as to (A) whether the MMCA complaint alleges an "occurrence," so that Clarendon and First Mercury have a duty to defend and/or indemnify PICA in the MMCA litigation, and (B) whether the MMCA litigation claims are barred by the E&O Endorsement policy exclusions.

**A. Duty to Defend**

The Ohio Supreme Court[2] recently stated:

>An insurer's duty to defend is broader than and distinct from its duty to indemnify. *Socony-Vacuum Oil Co. v. Continental Cas. Co.*, 144 Ohio St. 382, paragraph one of the syllabus (1945); *W. Lyman Case & Co. v. Natl. City Corp.*, 76 Ohio St.3d 345, 347 (1996). The scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured. *Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St. 2d 41, paragraph two of the syllabus (1973). The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage. *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 179 (1984). However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage. *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108 (1987).

*Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 245-46 (2007).

PICA argues that two claims set forth in MMCA's complaint are covered by the E&O Endorsement; specifically "interference with prospective economic advantage," and

---

[2] For the purpose of arguments on summary judgment, Defendants accept PICA's contention that Ohio law applies to this issue.

"misappropriation of trade secrets under California law."  The issue before the Court is whether these claims are arguably covered by the E&O Endorsement, in which case Defendants have a duty to defend PICA in the MMCA litigation or whether the claims are clearly and indisputably outside the contracted coverage, in which case Defendants do not have a duty to defend PICA.

For coverage to exist under the E&O Endorsement the injury cannot be  bodily injury, property damage, personal injury, or advertising injury and must have been caused by an "occurrence," *i.e.*, "an accident."  PICA argues that the policy language at issue is ambiguous and, therefore, must be construed against Defendants resulting in coverage for the MMCA litigation.  Clarendon and First Mercury argue that there is no coverage for the allegations in the MMCA complaint because the injuries alleged were not caused by an "occurrence."

**1. The definition of "occurrence" in the E&O Endorsement is not ambiguous**.

The E&O Endorsement defines "occurrence" as an "accident," but does not define "accident."  PICA argues that because there is no definition of "accident," the term "occurrence" is ambiguous and therefore should be construed against Defendants.  This Court disagrees.

Ohio courts have consistently held that the term, "occurrence," as used in commercial liability insurance policies, is not ambiguous.  For example, the Ohio Court of Appeals for the Eighth District soundly rejected the argument that the term, "occurrence," is ambiguous:

> However, the Hercules Complaint clearly does not allege an "occurrence" within the scope of the general liability policy in the case *sub judice*.  As noted above, the
> insurance policy defines "occurrence" to mean "an accident."  This language is "clear and plain, something only a lawyer's ingenuity could make ambiguous."  It would take an exceptionally fertile mind to contort the meaning of the term "accident" to encompass the claims in the case *sub judice*.

*Royal Plastics, Inc. v. State Auto. Mut. Ins. Co.*, 99 Ohio App.3d 221, 225 (8th App. Dist. 1994)

(citation omitted).  *See also, Environmental Exploration Co. v. Bituminous Fire & Marine Ins. Co.*, No. 1999CA00315, 2000 Ohio App. LEXIS 4985, at *18 (Fifth App. Dist. Oct. 16, 2000) ("occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," is "clear and plain").

Under Ohio law, where a term in an insurance contract is not defined by the policy, the term is to be given its ordinary meaning.  *Owens-Illinois, Inc. v. Aetna Cas. & Sur. Co.*, 990 F.2d 865, 872 (6th Cir. 1993).  The Courts in Ohio have consistently held that " 'occurrence,' defined as 'an accident,' was intended to mean just that -- an unexpected, unforeseeable event." *Randolph v. Grange Mut. Cas. Co.*, 57 Ohio St.2d 25 (1979) (unambiguous language in an insurance contract, such as "accident" is to be understood in its ordinary, usual or popular sense); *Morner v. Giuliano*, 167 Ohio App.3d 785, 791 (Twelfth App. Dist. 2006) (same).  *See also*, 20-129 Appleman on Insurance 2d § 129.2 ("In the context of insurance law 'accident" means an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force, but it does not mean the natural and ordinary consequences of a negligent act.").

Accordingly, the Court concludes that the term "occurrence" as used in the insurance policy at issue here is not ambiguous and this Court need not construe the policy language against Clarendon and First Mercury.

**2.  The MMCA complaint alleges injury that was not caused by an "occurrence."**

PICA contends that MMCA's allegations[3] to support its causes of action for

---

[3]For the purpose of arguments on summary judgment, Defendants accept Plaintiff's contention that California law applies to the MMCA litigation.

"misappropriation of trade secrets under California law" and  "interference with prospective economic advantage" are both based on "occurrences," and therefore, require Clarendon and First Mercury to defend PICA in the MMCA litigation or to indemnify it for the costs of that defense.  This Court disagrees.

### a. There is no duty to defend against the trade secret claim.

The MMCA complaint alleges "misappropriation of trade secrets under California law":

150. Defendants, and each of them, were aware of the secrecy of the identity and contact information of MMCA employees and associates and of their duty to maintain the confidentiality and secrecy of the identity and information of which they became aware, and not to use, disclose, or disseminate said information to anyone and to protect the identity and contact information of all MMCA employees and associates to which they became aware.

151. Defendants misappropriated the confidential proprietary and trade secret identity and contact information of MMCA employees and associates for use by PICA, PINKERTON-CI, BRI, and HP, to the detriment of MMCA.

The above allegations clearly indicate that MMCA claims that PICA acted intentionally and knowingly in misappropriating MMCA's confidential information.  The allegations that PICA was aware of the secrecy of the identity and contact information of MMCA employees and associates and of its duty to maintain the confidentiality and secrecy of the identity and information of which they became aware, and not to use, disclose or disseminate that information to anyone but did so regardless constitutes intent-driven allegations.  Because the complaint alleges intentional and knowing conduct, coverage is unquestionably precluded.

The Court concludes that the cause of action for misappropriation of trade secrets as set forth in the MMCA complaint alleges intentional and knowing conduct–not accidental conduct–which is clearly and indisputably outside the contracted coverage of the E&O Endorsement.  Accordingly, Clarendon and First Mercury have no duty to defend or to

8

indemnify PICA for MMCA's trade secret claim.

### b. There is no duty to defend against the interference with prospective economic advantage claim.

The MMCA complaint alleges "interference with prospective economic advantage":

122. During the period of time that MMCA employees and associates were contacted and solicited by Defendants, they were under contractual employment with MMCA.

123. Defendants, and each of them, were aware of the employment status of the MMCA employees and associates being contacted and solicited as set forth hereinabove and Defendants and each of them were aware of the Service Agreement between HP and MMCA.

Plaintiff contends that the above allegations do not rise to the level of alleged "intentional" conduct, thereby making it possible that PICA's conduct constituted an "accident." The Court finds that this alleged conduct cannot be construed as accidental. Even if the above allegations do not rise to the level of claiming that PICA acted intentionally, the above certainly does not allege "accidental" conduct on PICA's part. Certainly, a claim falls outside of coverage if the complaint alleges intentional conduct. However, as Defendants correctly contend, the opposite is not true—not all non-intentional conduct falls within coverage. To the contrary, the claim must still seek damages caused by an "occurrence," *i.e.*, an "accident," an unexpected, unforeseeable event.

Plaintiff relies on *North America Chemical Co. v. Superior Court*, 59 Cal. App.4th 764 (Cal. 4th App. 1997), for its argument that interference with prospective economic advantage does not require intentional conduct under California law. However, although that case does stand for the proposition that a party may recover for non-intentional interferences with contract—meaning that the party did not intend the ultimate injury–the California court made

9

clear that the alleged tortfeasor had to possess knowledge of the contract and "was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose" economic advantage. *Id.* at 786.  Thus, at a minimum, a *prima facie* claim for interference with prospective economic advantage requires foreseeability on the insured-defendant's part.  As such, damages cannot be accidental, *i.e.*, unexpected or unforeseeable.

According to the plain language of the allegations of the MMCA complaint and the nature of the cause of action, no coverage exists for the interference with prospective economic advantage claim under the E&O Endorsement.  Consequently, Clarendon and First Mercury have no duty to defend or indemnify PICA against MMCA's interference with prospective economic advantage claim.

### c. Duty to defend conclusion.

Even when construing all of the evidence in the light most favorable to PICA, the evidence does not present "a sufficient disagreement to require submission to a jury" and it is "so one-sided that Defendants must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52). Consequently, Clarendon and First Mercury are entitled to summary judgment on Plaintiff's duty to defend and to indemnify claims as well as PICA's breach of contract and bad faith claims which cannot survive absent a duty to defend.

### B. Policy Exclusions

Even if PICA could demonstrate that coverage arises for any claim MMCA asserted against it, exclusion (k) of the E&O Endorsement excludes coverage for all of MMCA's claims against PICA.

Exclusion (k) provides:

2. EXCLUSIONS

Such Insurance as is provided by this Coverage Part (D) shall not apply to damages arising out of: …

> k. Your employment or personnel practices, or injuries to any present or former officer or employee of the insured;

PICA makes no argument that is in the least convincing with regard to why this exclusion does not apply.  *See e.g.*, Plaintiff Memo Contra at 15 (arguing that exclusion (k) does not apply because "employment or personnel practices," when used in commercial policies, "typically refer to some type of unlawful discrimination in employment practices…." citing to American with Disabilities Act, 42 U.S.C. § 12101).  Factually here, MMCA alleges that PICA recruited its employees and the trade secrets each of those employees possessed in violation of a contractual duty of which PICA was aware and was bound.  Recruiting employees is unquestionably an "employment or personnel practice."

Thus, even drawing all reasonable inferences in PICA's favor, it has utterly failed to set forth set forth specific facts showing that there is a genuine issue of material fact for trial with regard to the application of exclusion (k).  *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. 574, 587 (1986).

### III.  Conclusion

Based on the foregoing, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Doc. # 15) and **GRANTS** Defendants' Motion for Summary Judgment (Doc. # 16).  The Court **DECLARES** that the E&O Endorsement does not require Clarendon and First Mercury to duty to defend PICA in the MMCA litigation or to indemnify it for the costs of the defense of

that litigation.  The Clerk is directed **ENTER JUDGMENT** in favor of Defendants and to **DISMISS** this action.

      **IT IS SO ORDERED.**

                                      **/s/ Gregory L. Frost**
                                      **GREGORY L. FROST**
                                      **UNITED STATES DISTRICT JUDGE**